Three cases for oral argument this morning. There's a strong likelihood that after the second case, we'll take a real short break before we call up the third one. The rules are pretty straightforward. When you have a green light, you've got a full run. When you get to that amber light, if there's some other issue you plan on arguing, it's a good idea to shift gears. The premium product of oral argument is answering the questions of the judges, so even if you have a red light, please answer our questions as succinctly as you possibly can. With that, I'll call the first case, United States v. Guillermo Campa-Barrera. Mr. Wright. Thank you, and may it please the court. In our legal system, a person cannot be compelled to become the instrument of his own condemnation, and that privilege is rooted in our deep respect for individual dignity, and it is a bedrock principle of our criminal justice system. There are three reasons why this court should reverse and remand this case for resentencing. First, the right to silence applies equally to trial and sentencing hearings. Second, a district court should never treat a defendant's decision to remain silent as a confession. And third, the district court punished Mr. Campa-Barrera for his silence in this case. Now, to my first point, Your Honors, the right to silence applies at sentencing to the same extent it would apply at trial, and this rule is grounded in the text of the Fifth Amendment itself, which says— What's your response to the possibility of waiver, Mr. Wright, in that during the hearing, when Judge Lindsey would ask questions of rights counsel, Mr. Campa-Barrera would jump in and answer. So he did offer testimony during this hearing. Your Honor, there are two reasons why the government's waiver argument is incorrect. The first one is legal, and the second one is factual. The legal argument, which is established by Mitchell, says a defendant can respond to some questions about the offense, including pleading guilty to the offense, without waiving the right to silence. That's exactly what happened in Mitchell, where the defendant stood up and said—the court asked, did you do that? And the defendant said, some of it. But that defendant did not waive her right to silence for purposes of sentencing or for purposes of the criminal case as a whole. So just legally, this argument is a non-starter. A defendant can answer background information questions— Well, how do you compare that to taking the standard? Isn't it once you waive your Fifth Amendment rights, you waive your Fifth Amendment rights, you can't pick and choose what questions to answer and what questions not to answer? So are you telling us now that the sentencing is different, that you can pick and choose what questions to answer and when to speak and when not to speak? Your Honor, I'm not saying that, and I do not believe that you can pick and choose which questions to answer. And this brings me to my second point. In addition to the legal Factually, this is not what the district court found. And I would remind the court that the judge said twice on two different occasions, nobody's going to stand up for the court when this case becomes the Fifth Circuit. I want the record to be extremely clear. The court said that on two different occasions at this sentencing, and the court did not say in response to the objection, my client has asserted his right to be silent, he's spoken through a witness and counsel, the court didn't say, whoa, whoa, whoa, you've already answered my questions, you can't do that. The district court said, I noticed that the defendant had nothing to say to the court today. Well, that brings up another interesting question of whether he declined allocution. He simply said, I have nothing to say. He'd already answered the court's questions. His wife had already testified about their situation, including that of his child. And when he asked him if he wanted to allocute, he said, I have nothing to say. That's possibly the fact that, well, there's no more that needs to be said. Your Honor, I think that the judge's response to the objection really shows that that's not the case. The judge says, I noticed you had nothing to say to the court. Now, none of us were there, but it appears from the record that these were background questions that were directed at counsel, and Mr. Campobarera may have been speaking to his lawyer, he may have been speaking to the court, there's certainly a point at which they're going back and forth, but these are background questions about his history, not sort of this broad, open-ended, what allocution would be. And if the court had stopped right then and had not offered him the opportunity to speak about any matters in mitigation of sentence that he wanted to, we would get this case reversed, even on plain error, because the right to allocution is this freestanding, open right to make a general statement about sentencing. In that context, when the court put that question to the defendant and said, you can make any statement you want to say, that could only mean one thing, which is I decline the opportunity to allocute. And if that weren't the case, that's very debatable. And, Your Honor, I think... You know, anything you'd like to say, I have nothing to say. Your Honor... I'm not saying I decline my right to allocution. Your Honor, the district court itself interpreted the defendant's statement in the way that we're submitting, which is the only natural meaning for it in the context of this case. When you read it, he says, observe, you had nothing to say. That is an indication to me that you perhaps don't understand the severity of what's going on here. Your Honor, I... The court certainly didn't say, I'm basing my ruling in part on the fact that you did not respond. He's saying, in effect, I'm concerned you don't understand the severity of what's happening here. Your Honor, that was the court's concern, but that concern was... This, therefore, proves anything. He said, it indicates to me you don't understand the severity of what's happening. We would submit, Your Honor, this court drew an inference from the defendant's decision to remain silent. What's that inference? The inference is that he does not understand the gravity of the situation that's before him. Well, isn't that a factor the judge needs to consider under 3553? It's a permissible factor the court can consider based on acceptable evidence. The defendant's decision to remain silent in sentencing is not something the court can use to weigh at that. Again, I think it's debatable he refused to allocate, but that's neither here nor there. Why isn't this harmless error at most? Your Honor, the government's burden on harmless error under the Ibarra-Luna case is to show the same sentence for the same reasons. It is our contention that the reason here is the problem. The court drew the inference, and I should say it's not just his lack of appreciation for the gravity of the offense, but also that the court had no indication that he wasn't going to return. He wasn't just going to do it again. That's an interesting point because his lawyer urged the court to understand that the defendant wasn't going to come back. He was going to leave. He wasn't coming back. The wife had testified. My daughter and I will have to join him in Mexico. And so the lawyer himself, I'm not saying this is invited error, but the lawyer himself for the defendant said, he's going to leave. You're never going to see him again. And the judge was simply, in effect, commenting on this claim of he's not coming back. And I suppose the judge was saying, well, I certainly can't be sure of that. He's already entered illegally four times, and he has a criminal record as long as my arm. Your Honor, if that was all the court said, we would have a much more difficult burden in this case. But in this case, the court itself told you, I'm drawing these inferences because you declined to make a personal statement in sentencing. What that tells the court is what the district court said. Again, this is a court who is very concerned about making a clear record on what it was objection. If the court thought we were misconstruing what it had said, it would have corrected us. That's exactly what happened to the objection. The lawyer said, I object on the basis of the upward departure. My client's asserted his right to innocence. He's spoken through his lawyer. He's spoken through a witness. That's the objection. And the court said. But did the court give good grounds aside from him not speaking up at allocution? Did And in that sense, Your Honor, this case is exactly like Mitchell. Because in Mitchell, the government had the testimony of an informant who said the defendant was involved in all of these drug transactions. So it's not enough that there's other evidence. The government has made the argument in its brief that the silence was used merely to corroborate something that there was other evidence of in the record. But that's not correct, and Mitchell shows that. And this is returning to my earlier point. This is such a foundational principle. You were just not allowed to utilize the defendant's silence. If there's other evidence in the record from which the court could conclude those things, then it's free to conclude those things. But in this case, we know because the court said so, that it was drawing those inferences on the basis of the defendant's silence. So you argue Harmon's error is not applicable, inconsistent with the violation here. It's not a defense amendment right. So it's not susceptible to Harmon's error. Is that, in effect, what you're arguing? Your Honor, I would welcome that ruling in a published case with open arms. But I am not dependent upon that ruling. The error here is not Harmon's, first of all, because under this court's precedent, the government would have to show same sentence for the same reasons. One of the reasons here is what we're here to challenge. Second, I would What standard? How does the government have to show that or prove that? What do we look at? Well, what you could look at is if, for instance, the court had not connected the inferences it drew from silence from the sentence it was going to impose. I would also like to say, though, I'm not limited to those things. I think this is sufficient for me to win. But in this case, we also have the problem that the court said, I have no indication that you're going to stay outside of the country. Now, as Judge Barksdale has pointed out, Mr. Campobarera did give that indication to the court through a witness and through the argument of counsel. But it's like the failure to allocute was so important. The failure to make that personal statement was so important that it drowned out the evidence that he did present. All he was, in effect, saying was you haven't offered me any mitigation mitigating evidence contrary to what your lawyer said and your wife said. You haven't supported what they are claiming. So that's a factor I have to consider. Your Honor, if the again, it's almost as if it's invited error. Your Honor, if the court had not said, I'm doing this on the basis of the fact that you're not making a personal statement, we'd have a much more difficult case. But the court said that's why it was drawing the inferences. Second, I would like to point out that when we objected, again, the court corrected one part of the objection. When we objected and said you can't depart on the basis of my client invoking his right to silence, we presented a witness, we presented a counsel, the judge said it's not a departure. It's a variance. And said in a prior case, this court has done this and we've done it in a variance before. This is almost like when a, a, a, someone at a checkout stand is repeating your order to you and say, you wanted that burger with mayonnaise and cheese and lettuce. And you say, I didn't want mayonnaise. And then the government coming back and saying, well, you didn't want lettuce either. Right? The court corrected the objection where it was inaccurate. It was not a departure. The court's decision was a variance. But the court never said, oh, it wasn't because of his statement, it was because of the other things. The court made it clear on this record it was basing this decision on his failure to make a personal statement. On the second point, the substantive unreasonableness of the sentence, and I know the government's going to bring it up in its argument, but I want to hear your position on it. The government argues we ought to review that only for plain error because you weren't specific in your objection. What's your response? Your Honor, our response is the objection said we did give you a witness. I'm not sure how much more specific the government wanted us to be. That's the only basis on which you said to the court it was a substantively unreasonable. Is that? Your Honor, the objection was we object to the sentence. It is, we have asserted our right to silence at the sentencing hearing. We have put forward a witness for your consideration. We've put forward the argument of counsel, and we object to the upward, and the lawyer said departure. The judge corrected that it's a variance. And then the lawyer corrected it, all right, then variance. We are objecting to this because you're doing this on the basis of the defendant's silence. So you limited your objection to substantive unreasonableness to what? The question about whether the court's viewing his silence improperly? Was that your whole objection to the substantive unreasonableness? Your Honor, the one issue, we've raised two issues here. One of them is that this is based on the sentence. You've drawn an impermissible inference that violates Mitchell and Estelle. But a closely related point of that is the court also said I have no indication that. Now if the court, in making this very clear record, had said you've put forward a witness but I don't believe her because A, B, C, and D, we wouldn't have a second point. They're very closely related, right, because it was the silence that caused the court to say I have no indication. But in saying I have no indication, the court is discounting the fact that it did get an indication. The court didn't say I don't have a persuasive indication, say your record outweighs the testimony that your wife has said. The man's wife said if he's deported, he's going to have to stay there, and we, he and his daughter, are going to have to go be with him. He did have an indication. In other words, that was an error. But it was very closely related to the main error that we're pressing on this appeal, which is drawing adverse inferences from sentencing. The Seventh Circuit said it was okay in one case. Is that, can you distinguish that Seventh Circuit case? I know there are a couple of circuits that said that it cannot be used, but I think the Seventh Circuit said it was all right to use the fact that they remained silent at allocution. Is that case distinguishable, or you just disagree with its outcome? Your Honor, I think we're just content to rely on Mitchell and Estelle. And this Court, even before the Seventh Circuit held that, before Mitchell, before Estelle, has long held, even in the days before substantive review of reasonableness at all, when the Court's view was any sentence within statutory maximum, this Court can't review. Nonetheless, and this is the Rogers case we cited in 1974, nonetheless, where the defendant has paid a judicially imposed price for the assertion of the right to silence at sentencing, we will reverse, almost like a heightened procedural error for something of constitutional magnitude like this. So I think the Rogers case would control over any contrary press of the Seventh Circuit. And I would say, if I recall correctly, that case did not have the record. It wasn't just a mention of the fact that the defendant didn't allocute. The judge here has said, I am drawing these adverse inferences against you because you did not make a personal statement. You did not make a personal statement. You did not make a personal statement. And I think this Court, as a whole, for the purpose of this recording, the PSR had recommended either a departure or an upward variance, upper departure or upward variance. So you're not arguing your client wasn't on notice that this was recommended to the Court. We're not arguing lack of notice, Your Honor. And you did have plenty of notice that this was being considered. This being the non-guideline sentence. Yes, sir. We had notice of that from the PSR.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. The case will be closed. Mr. Wright, you are reserved for bow time. Mr. Hendricks? May it please the Court, Wes Hendricks on behalf of the United States. The Supreme Court explained in White v. Woodall that it is not uncommon for a constitutional rule to apply different- White vs. what? White v. Woodall. That it is not uncommon for a constitutional rule to apply differently at sentencing than it does at trial. Now, both Supreme Court and this Court's case law reflect that reality in the realm of the Fifth Amendment privilege against compelled self-incrimination. For example, it's now well established that a district court may properly consider a defendant's silence in withdrawing an acceptance of responsibility reduction. It's also established that district courts can properly consider a defendant's lack of increasing a sentence. As in those cases, the district court here did not impose a sentence in violation of the Fifth Amendment, and this Court should affirm. Now, it can do so quite simply on waiver or the failure to properly invoke, but there's two threshold arguments that the government would like to discuss today. First, the Fifth Amendment simply is not implicated when at a sentencing and a district court fashions a sentence under 3553A, the Court infers from a defendant's silence things like lack of remorse, lack of contrition, or a lack of acceptance of responsibility. This Court has suggested as much- About lack of understanding of the gravity of the situation. Same thing. I agree, Your Honor. Yes, the Court can also properly infer that. And I use lack of remorse as shorthand for what the Court did here, which is you continue to violate the laws of this country, you have a pattern, a habitual pattern of illegal activity as noted by the PSR, yet you keep doing it. You don't seem to understand the seriousness. And it was perfectly proper for the Court to infer that here, and it wasn't a violation of the Fifth Amendment. Twice this Court has suggested that in this setting, not the setting of Mitchell, not the penalty phase of a death penalty, but in this very peculiar and unique setting where a district court is trying to fashion a reasonable sentence, Fifth Amendment simply isn't in play. First, in Ronquillo, this Court, in a published opinion, faced a Fifth Amendment argument. There, the district court considered the defendant's lack of cooperation in fashioning the overall sentence, and it imposed two sentences to run back-to-back consecutively. And the defendant said, hey, that's a violation of my Fifth Amendment privilege against self-incrimination. This Court said, no, it's not. It limited Mitchell to its pure holding, which is the Court did not rely on the silence to establish facts of the offense. Therefore, there's no Fifth Amendment violation. But in footnote three of Ronquillo, this Court said, and I'll quote, we question whether this appeal implicates Ronquillo's Fifth Amendment rights. And then in that same footnote, it went on to explain at the time of sentencing, the defendant had pled guilty. There were no other outstanding crimes for which he could implicate himself. And so, you know, we're going to reject this argument based on Mitchell alone, but we question whether the Fifth Amendment's in play. How far are you suggesting the law goes? I mean, allocution is a right that the accused has to say something at sentencing. It's a right to say something if you want. If we go to where I think you might be going is that you're required to speak up because if you don't, then the judge can increase your sentence. So does that then make it a requirement that you better speak up or else the judge is going to up your sentence? Where do we draw the line between it is a right to allocute versus you are required to allocute? I understand. The government is not, of course, asking this Court to hold that allocution should be a requirement. It absolutely is a right. But in both Kleinenbril and Mourning, and that's the Court's cases in the acceptance responsibility realm, this Court explained that affording the possibility of a more lenient sentence is not the same thing as compelling self-incrimination. In other words, rewarding contrition does not compel self-incrimination. And that's what happened here. The district court gave the defendant an opportunity to provide anything he wished in mitigation. He didn't have to. It was his choice. But choices have consequences. And I'd like to note one other thing that makes this case unique. The defense counsel here created an expectation in the district court's mind that his client would speak and would give an assurance that he would stay outside of the country. At page 89 of the record, the defense counsel was arguing for a guideline sentence. But he knew, based on the extreme recidivism, that was going to be a tough argument. So he said, a guideline sentence coupled with an assurance on behalf of Mr. Campobarera that he will stay outside of the country is sufficiently reasonable and just punishment. And then he said, and I quote, defense counsel, I will let my client speak to the court. That is a promise of an entree from the defendant that he's going to give the assurance. And so the district court here gave the opportunity. Okay, Mr. Campobarera, it's your turn. Anything you want to say in mitigation, essentially. And Mr. Campobarera said, I have nothing to say. What do we do with invited error light? I agree, Your Honor. I mean, invited error is invited error light or the other side of a waiver or failure to properly invoke. What do you do in a situation where there's an issue of obstruction of justice or leadership role and the facts and how it happened can affect his sentence. So by speaking out, he might be admitting obstruction of justice or admitting leadership role. So him saying something could result in his sentence being increased. So does he have a right to not speak out for fear that he might say something that will increase his sentence? Well, he certainly has the right not to speak. But the district court at the 3553A sentencing hearing has the right to draw reasonable inferences from that silence. And the best example of that, I mean, it's an understandable question and it's a fair question. This court in Klein and Burrell faced an even more dramatic situation than the hypothetical you just offered, and it still rejected a Fifth Amendment argument. And the facts are really so dramatic that they bear repeating. In that case, it's one of the acceptance responsibility cases, the defendant was charged with multiple federal drug crimes and an assault on a federal officer crime. It's based on officers executing a warrant. During the execution of that warrant, Klein and Burrell shot at the officers and hit one of them multiple times. So we have federal charges, but critically, we have parallel state proceedings going on. And there is a pending state charge for attempted capital murder. So we're not talking about the possibility of an obstruction increase under the guidelines. We're talking about pending capital murder charges. Federal charges go first. He's found guilty, and the district court withdraws acceptance or doesn't give the acceptance reduction because he will not accept responsibility for the assault. And the defense counsel says, well, Your Honor, we can't accept responsibility for the assault without implicating our client in pending state charges. That's a violation of the Fifth Amendment. The district court said, no, it's not. They appealed to this court, and this court in Klein and Burrell in a published case said, to the extent there is a dilemma created by this opportunity to accept responsibility or aliquot, it's a dilemma created by the defendant. And again, rewarding contrition, creating this possibility of mitigation, is not the same thing as compelling self-incrimination. If there's no Fifth Amendment violation under those circumstances, there's certainly no Fifth Amendment violation here. The defendant, there were no other pending charges. There was not an obstruction guideline that was possible out there. Are there margins of any rule where this court would have to grapple with, for instance, under Mitchell, what are facts of the offense? Are facts of the offense, do they qualify as, say, the drug amount? But those questions aren't presented in this case. In this case, we have a court that does what district courts do every day, which is try to fashion a reasonable. Would it matter if the accused defendant pled guilty or whether he'd gone to trial and intended to appeal for sufficiency of the evidence, still was claiming to his innocence, so he came up for sentencing and refused to say anything because he's still appealing his conviction and doesn't want to say anything about the offense, intending or hoping that this court or some other court is going to reverse the conviction, so he remains silent at allocution, pending appeal, and he's gone to trial. The jury's found him guilty, but he has not admitted his guilt, like a guilty plea. Is that a different situation? Defendants – I don't believe it's a material distinction. I mean if Klein and Brel said there's no Fifth Amendment violation when capital charges are pending and unresolved, I don't see a distinction. I mean every day defendants choose to go to trial and assert their rights and challenge sufficiency on appeal, and they don't get acceptance responsibility, and they do so because the court says, I'm not getting an indication that you accept, and I have nothing, just like the court said here, there's no indication and I have nothing on which to mitigate the sentence. It's routine for courts to impose longer sentences on those who do not confess, do not plead guilty, do not accept responsibility, and to impose shorter sentences on those who do. There's no constitutional violation in that reality, and there's no constitutional violation in what happened here. There's a second line of cases, in addition to the accepting cases, that likewise support what the district court did here, and that's both Roberts from the Supreme Court and Ronquillo from this court. And there the defendant relied on – sorry, excuse me – the district court relied on the lack of cooperation. The government in those cases argued, Your Honor, you should impose a more severe sentence here because he's not cooperating. He could have named names. He could have provided information about the conspiracy, and the district court considered those arguments and noted them in an opposing sentence. Again, that's a much more dramatic circumstance than what faced Judge Lindsey here. No Fifth Amendment violation in those cases, no Fifth Amendment violation here. So if there's an unresolved murder and he's been convicted of drugs and he gets up there, and he says, I'm sorry, I'm doing drugs, and I'm sorry for the murder that I committed in the middle of the drug transactions, and he admits to a murder, can that statement be used against him in a prosecution for that murder? I don't know, Your Honor. I'd hate to speculate. I have not researched that question. I think if in the situation of Klein and Brow, he had accepted responsibility, but reserved that under the state law he still reserves the right to defend, many judges are going to give him the acceptance. The court there just chose to make the decision based on what district courts are charged with doing. That acceptance was not advisable there, and this court affirmed. District courts might have chosen to do otherwise, and this court still would have affirmed. But again, that is in the realm of what district courts do in imposing and fashioning a reasonable sentence. I assume we disagreed with you and deemed it was error. Tell us why it would be harmless. On the harmless error point, the test would be whether the district court imposed the same sentence for the same reason. And the government's position is that it's plain error because we think the objection that was made was focused on the Fifth Amendment point, which is what has been the focus today in their primary and their first argument. The defendant did not put the district court fairly on notice that, well, hey, wait a second. You said you had no indication. But remember, Judge, remember, his wife spoke that there was no such notice. So plain error should apply. Even if it didn't, this is a factual determination subject to clear error, and there was no clear error here. No, wait. I'm sorry. I'm mixing up the second issue and the first issue. Thank you, Judge Barksdale. As soon as I said clear error, I realized that I'd gone astray. I apologize. Same sentence for the same reason. The reason here, the district court spoke at length about why he was going to impose the sentence he did before even mentioning the sentence. That reality is borne out by the statement of reasons, and I would urge the court to look at that statement of reasons. It's on page 125 to 126 of the record. It's unique in this case. I understand a lot of statements of reasons. There's a few boxes checked, and that's it. Here, there's a lengthy paragraph that bumps into a second page as to why the district court did what it did. It lists all the reasons, and critically, silence is not mentioned. The silence that was discussed here was simply noting you had an opportunity to mitigate. I have no reason to go anywhere other than the sentence that I've landed upon. And so we know, based on this record and the statement of reasons, that the court would have imposed the same sentence for the same reason. So any error would be harmless. But, again, even if this court disagreed that the Fifth Amendment just doesn't apply here, or that under the circumstances of this case there was no Fifth Amendment violation, there's still the question of whether he waived it. There is just a fundamental point in Fifth Amendment case law that a witness may not pick and choose the realms of the subject matters with which he discusses. And here, the defendant volunteered multiple times information during the hearing. And there was an argument that these were just background questions and just background information. The record doesn't bear that out. The record here, probably the most critical statement, is on page 87. And there the district court was noting, defense counsel, you've argued that he does this because he loves his daughter, and his daughter has a health condition, and that's why he comes back. And the district court starts to challenge that. Well, how old is his daughter? Okay. Well, it seems like the first two illegal reentries occurred before she was born. And then the defendant, in response to that, so not providing background information, not biographical, says, I was already with my wife, indicating, okay, well, my daughter wasn't born yet, but there was another pull. So there's another excuse as to why I've broken this law, so don't be as hard on me. When a defendant volunteers and speaks in response to skepticism from a district court, that should constitute a waiver of any Fifth Amendment. Again, or additionally, the invocation of the Fifth Amendment privilege must be unambiguous. I mean, there are reams of cases that say that. And here we have statement. Yes, I went to school through ninth grade. Statement. I've lived here my whole life. Statement. I was already with my wife at the time. But then suddenly I have nothing to say. Is that or is that not a proper invocation of the Fifth Amendment? It's certainly debatable. And when it's debatable, case law indicates it's not a proper invocation. So even if this Court disagrees, Judge Stewart, with our primary argument that the Fifth Amendment just doesn't apply in these circumstances, or our secondary argument that given the facts and circumstances here, this defendant certainly was not compelled against his right. It was not properly invoked. It was waived. And any error was harmless. Unless the Court has— I want to know your basis for saying plain error review of the overall substantive reasonableness of the sentence. You know, normally at sentencing at the end of the—the judge imposes the sentence and counsel says, Your Honor, we object to the substantive reasonableness of this sentence. And I think that's good enough for our Court. Why would we review this under plain error? What's the differing factor? Well, I don't understand the defendant to really be raising a true substantive reasonableness argument. To the extent there is one, I would agree, Judge Barksdale, that this Court can review the substantive reasonableness under plain error review. I mean, as for the secondary argument here that there was clear error by the Court noting it had no indication despite the wife's statement, to me that's a procedural reasonableness question. Did the Court, you know, commit this clear error? Maybe it's just semantic. Maybe whether it's procedural or substantive, regardless, that argument should be reviewed for plain error. You know, the wife's statement because the district court was not properly alerted to the idea that, wait, you're forgetting what the wife said, but yet you're saying no indication. But again, even if it's plain error, we win. The Court properly would dismiss the wife's statement for three primary reasons. Again, she stood up and said, if he's deported, he'll live in Mexico and we'll have to follow him. The Court would properly and implicitly reject that for three reasons. First, the wife told the probation officer the exact opposite. In the PSR, at page 109, the probation officer was interviewing the wife, and she told the probation officer that she had no plans to relocate to Mexico. She had never lived there and she had no family there, but yet she says something different at the sentencing hearing. Second, the defendant had been removed and had legally re-entered multiple times, and so the Court was quite reasonably skeptical of any assertion by his wife that this time he would stay out. And finally, the wife had not previously lived in Mexico. She hadn't previously relocated there, despite the many removals, most likely because she knew he was coming back. So we do think plain error should apply. Even under clear error, the government survives that challenge. For these reasons, we would ask the Court to hold that there is no fifth amendment violation here and that the Senate certainly was procedurally and substantively reasonable. So we shouldn't hold it against you if you remain silent the last two minutes of your argument? Normally I find that the Court appreciates that. So unless there are further questions, I will cede the remainder of my time. Thank you. Thank you, Mr. Hendricks. Mr. Wright, you have a vote. Thank you, Your Honor. Mitchell is directly on point. The rule against negative inferences at a criminal trial apply with equal force at sentencing. The purpose of the right to remain silent is that you might say something incriminating that's going to hurt you. In this case, he pled guilty. He admitted the facts of the case. He answered the questions. I mean, was there really anything incriminating he could say that would give him the right to continue pleading a fifth amendment right? He didn't formally say, I plead the fifth amendment because anything I say might be used against me. I mean, what was there left for him to say that could have been incriminating? Your Honor, two things. Maybe you don't want to answer that. And I'm happy to answer that. Mitchell, this is Mitchell that the Court is describing, right? Exactly the same circumstance is there. And the Supreme Court has said that the right still applies and including inferences from that right. Second, we know from this case that facts that some people might consider mitigating in an illegal reentry case, the Court considered aggravating in the sense of its likelihood to cause recidivism. So perhaps the defendant realized if I tell him how much I love my daughter, how strong my family draw was here, this Court is going to see this as a reason why I wouldn't comply. So that would be a reason that he didn't. Mitchell stands for the proposition that a defendant is not fully incriminated until sentence is pronounced. And I think it's important here with the idea that sentencing and trial are the same. If we look at page 15 of the government's brief, the government has said it would be reasonable to cross-examine him in response to his answers to the Court's questions. If this Court is prepared to countenance the possibility that on exactly this record, at the point of allocution, the defendant said, I have nothing to say to the Court, and the prosecutor says, Your Honor, the government would like to call Guillermo Campobarera to the stand, if that is what the government is arguing for, I think we can reject it out of hand. But that's ultimately what they are arguing for in this case. Because if the right to silence applies, it applies the same way it would apply at trial. And it is a right from Griffin, from Estelle, and from Mitchell to be free of negative inferences. And again, this goes back to what I started the argument with. This is a question of individual dignity. It is not merely a right to be silent. It is a right to be free of compelled self-incrimination. If we allow the fact finder to draw negative inferences from the defendant's silence, then there is no right to avoid being that instrument of your own condemnation. What if the court puts him on notice and says, you don't have anything to say? I'm going to hold that against you. How do you feel about this crime? Aren't you going to tell me anything? And if you don't, then I'm going to assume that you're not showing remorse. And puts him on notice. Your Honor, that's… Is that different? What we're asking for is a ruling from this court following Mitchell, following Estelle. The court cannot do that. The defendant has an absolute right to remain silent. And he's imbued with that by the text of the Fifth Amendment to the Constitution in any criminal case. So even if he's put on notice by the court that it could be used against him for not speaking up at elocution, he still has a right to remain silent? He does. We would object to that. The court would be wrong. That's in fact what the court believed here. And we're asking this court to correct that. What's your response to counsel opposites urging that your client selectively responded in the colloquy in terms of correcting or disabusing the court's skepticism about the reentry? Your Honor, again, first I would point out that this is not what the district court found. So the district court did not consider those something to say to the court. I don't think that's exactly the question that I asked you. I got that answer right. So there is one. Number two, I would say these are factual, biographical questions, which were part of the PSR interview as well. No one would contend that by sitting down with a probation officer, the government then got the right to compel him to be a witness against himself. What about when the court said, well, you reentered the first time before your child was even born, and he said to the judge, but I was already living with my wife or whatever he said? That's not just biographical information. He's trying to counter a point the judge is making. Your Honor, as a point made in the brief, it's not clear that he's talking to the court there rather than his attorney. To whom is he talking? He could be talking to his attorney, who's speaking for him at this time. But even if he is talking to the court. Who's what? He's speaking to his attorney, to Mr. Campo Barrera's defense attorney, who's responding to the court, saying, well, it's – Well, the court reporter picked it up. It's in the record. It is in the record, and that's what I say. But even if it was to the court, even if it was to the court, this is still a point of biographical information of what dates things happened and what were his family ties. Well, how does that – well, anyway, I don't see how that's biographical. What's your response to Mr. Hendricks urging that if we look at the full statement of reasons by the district court, page 125, 126, there is no mention about the silence, et cetera, et cetera. There's the full panoply about the sentence itself. Should we ignore that and only focus on what you're arguing in terms of what's in open court? Is it germane at all? What's your response? Your Honor, our position would be when the district court said it two different times, page 81 of the record, the court has nobody fighting for it on appeal, and again on page 97 of the record, in response to our objection, which triggers this appeal, I'm going to make the record clear. When the court is being so careful about its oral explanation of the sentence and saying I'm going to be clear about this, when the court says I drew these adverse inferences against you because you had nothing to say to me, that we need to take the court at its word. So my question was in the statement of reasons, there is no mention of it. I understand your argument in terms of what he said. I'm asking you about the statement of reasons, not the other comment. I'm saying is that immaterial to our analysis? Is it of no weight? Are you arguing the statement of reasons that the judge gives is surplusage, that it's really what he said on the record? That's what I want an answer to. I don't think it's surplusage, Your Honor, but I don't think the absence of a reason that is spoken orally, particularly in the context of the court saying I want to make this very clear. It wouldn't be surplusage, for instance, if the court said at the sentencing hearing earlier today, the court indicated this, but I want to make it very clear. I wasn't drawing adverse inferences from his silence. I drew these inferences based on the record. There was an absence of compelling. The written statement of reasons would be relevant to rebut what the court had said. That's not what we have here. We have an absence of it from a written statement of reasons and a court who said twice to this court, I want to be very clear in what I say on this record. I'm drawing adverse inferences.  Thank you, Your Honor. All right. Thank you, Mr. Wright. Mr. Hendricks, appreciate your briefing and your oral argument. Interesting case. We'll decide it. All right. We'll call up the second case.